AO 91 (Rev. 11/11) Criminal Complaint                                    AUSA Luke Fiedler (312) 886-0973

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NUMBER: 26 CR 436

DONTRELL GORDON

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about June 9, 2026, at Country Club Hills, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

### Count One

| Code Section | Offense Description |
| --- | --- |
| Title 18, United States Code, Sections 2114(a) and 2 | attempted robbery of an individual having lawful charge, control, and custody of money or property of the United States, and, in effecting such attempted robbery, put that person's life in jeopardy by the use of a dangerous weapon, namely, a firearm |

### Count Two

| Code Section | Offense Description |
| --- | --- |
| Title 18, United States Code, Sections 924(c)(1)(A) and 2 | knowingly using, carrying, and brandishing a firearm, during and in relation to a crime of violence, for which the defendant may be prosecuted in a court of the United States, namely, attempted robbery of a person having charge, control, and custody of money of the United States, in violation of Title 18, United States Code, Section 2114(a) and 2 |

This criminal complaint is based upon these facts:

 _X_  Continued on the attached sheet.

*Thomas J. Callaghan*
_____
THOMAS J. CALLAGHAN
Special Agent, Federal Bureau of Investigation (FBI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: <u>August 11, 2026</u>                     _____
                                                        *Judge's signature*

City and state: <u>Chicago, Illinois</u>          <u>GABRIEL A. FUENTES, U.S. Magistrate Judge</u>
                                                        *Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## **AFFIDAVIT**

I, THOMAS J. CALLAGHAN, being duly sworn, state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately July 2010.

2.      As part of my duties as an FBI Special Agent, I investigate criminal violations relating to violent crimes, including, among others, kidnapping, bank robbery, and the apprehension of violent fugitives. I started working as a Special Agent in the FBI Detroit Division, where I investigated health care fraud. I transferred to the Chicago Division in April 2015, and I am currently assigned to the FBI Chicago South Resident Agency Safe Street Task Force, where I investigate violent gangs and violent crimes to include homicide, attempt murder and numerous other illegal gang activities.

3.      This affidavit is submitted in support of a criminal complaint alleging that DONTRELL GORDON has violated Title 18, United States Code, Sections 2114(a) and 2, and Title 18, United States Code, Sections 924(c)(1)(A) and 2.  Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging GORDON with attempted robbery, in violation of Title 18, United States Code, Sections 2114(a) and 2; and use of a firearm during a crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2, I have not included each and every fact known to me concerning

1

this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

4.      The statements in this affidavit are based on my personal knowledge and on information I have received from other FBI personnel and from personnel of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").

## I.      FACTS SUPPORTING PROBABLE CAUSE

### *Summary*

5.      In summary, as further described below, on or about June 9, 2026, Individual A brokered an illegal gun transaction by arranging for gun suppliers to sell firearms to individuals ("UC-1, UC-2, and CI-1") who, unbeknownst to Individual A or the gun sellers, were working with ATF in an undercover capacity and posing as people interested in illegally buying firearms. After UC-1, UC-2, CI-1, and Individual A arrived at a location in the Northern District of Illinois to conduct the gun transaction, several individuals, including Amir Fagan, Darrion Rayford, and Dontrell GORDON,[1] arrived at the scene in a Dodge Dart and attempted to rob UC-1, UC-2, and CI-1 of their money at gunpoint. When supporting law enforcement agents arrived at the scene, GORDON fled on foot. Individual A, Fagan, and others were arrested at or near the scene.

---

[1] Fagan and Rayford are currently charged for their involvement in the offense in *United States v. Amir Fagan, et al.*, 26 CR 371 (J. Pacold). GORDON fled the scene of the attempted robbery and was not arrested or charged with this offense until August 10, 2026.

6. Law enforcement found a cellphone belonging to GORDON in the Dodge Dart. A search of the cellphone showed phone and video contact between Individual A and GORDON earlier in the day on June 9, 2026, the day of the attempted robbery. Individual A identified GORDON as one of the individuals who had pointed a firearm at him and the people he thought were gun buyers on June 9, 2026.

### *Planned Firearm Transaction*

7. More specifically, according to UC-2, UC-1, UC-2, and CI-1 planned to meet with Individual A on June 9, 2026 for the purpose of purchasing eight total firearms for a total purchase price of approximately $8,700 USD in cash.

8. According to UC-2 and an undercover video, UC-1, UC-2, and CI-1 left a predetermined staging location in an undercover vehicle ("UCV") on June 9, 2026, at approximately 4:07 p.m.

9. The UCV, UC-1, UC-2, and CI-1 were equipped with covert audio and video recording equipment. According to UC-2, the UCV traveled to Restaurant A on the 13400 block of South Cicero Avenue in Crestwood, Illinois, where they picked up Individual A, who entered the UCV. According to UC-2, additional law enforcement agents conducted mobile surveillance of the UCV.

10. According to video from inside the UCV, Individual A directed UC-1, UC-2, and CI-1 to drive to a residence on the 18800 block of Loretto Lane in Country Club Hills, Illinois, to meet another individual who was in possession of the firearms to be purchased. According to video from inside the UCV, UC-1, UC-2, CI-1, and

3

Individual A parked the UCV in the driveway of the residence at approximately 4:48 p.m.

11.     According to video from inside the UCV and UC-2, at approximately 5:27 p.m., a white Dodge Dart bearing Illinois license plate ending -1878 ("the Dodge Dart"), arrived at the residence and parked in the street behind the UCV. According to video from inside the UCV, Individual A exited the UCV shortly before the Dodge Dart arrived and began making phone calls. According to UC-2, those calls were not audible to him or UC-1. According to video from inside the UCV, CI-1 exited the UCV shortly after the Dodge Dart stopped behind the UCV.

### The Attempted Robbery

12.     According to video from inside the UCV and UC-2, the Dodge Dart contained multiple individuals. According to video from CI-1 and UC-2, two individuals—Fagan and a second person, now known to be GORDON, as set forth below in Paragraphs 18 to 23 below—exited the Dodge Dart. Fagan wore a dark colored hooded sweatshirt, a black t-shirt with a colored graphic on it and dark colored pants. GORDON wore a black, balaclava-style face mask, grey gloves, black pants, and a black hooded sweatshirt. GORDON also carried a black backpack with what appears on the video to be an AR-style pistol concealed behind GORDON's backpack. [2]

---

[2] An affidavit in support of a prior complaint incorrectly identified GORDON as Demond Edwards. According to publicly filed documents, on June 11, 2026, the government charged Fagan and two additional defendants, Demond Edwards and Chashonn Toney, via criminal complaint (the "Complaint"). *See United States v. Amir Fagan et al.*, 26 CR 291, Dkt. 1. The complaint charged Fagan and Edwards with attempted robbery in violation of 18 U.S.C. §§ 2114(a) and 2, and charged Toney with assault of a federal officer in violation of 18 U.S.C.

13. According to video from CI-1, Individual A and CI-1 then approached the Dodge Dart and greeted Fagan and GORDON. Fagan and GORDON asked CI-1 and Individual A if they had the money to purchase the firearms, and CI-1 and Individual A confirmed they did have the money to buy the firearms. CI-1 and Individual A asked Fagan and GORDON if they had the firearms in GORDON's backpack, and Fagan and GORDON confirmed they did have the firearms to sell. CI-1 and Individual A then asked Fagan and GORDON to bring the firearms over to the UCV. Individual A and CI-1 then returned to the UCV with Fagan and GORDON following them.

14. According to video from inside the UCV and from UC-2, after Fagan, GORDON, CI-1, and Individual A approached the UCV, CI-1 opened the trunk of the UCV and UC-2 and UC-1 exited the UCV. UC-2 asked GORDON and Fagan to put the firearms in the trunk of the UCV. Fagan asked UC-1 and UC-2 to show him and GORDON the money. According to UC-2, he removed the $8,700 USD from his front pants pocket and displayed the money to Fagan and GORDON.

---

§111(a). *Id.* On June 17, 2026, the government filed a motion to dismiss the Complaint. *See* 26 CR 291 at Dkt. 14. The motion to dismiss stated that the immediate prosecution team received evidence on June 16, 2026 that was not previously possessed by the government depicting a shooting of Edwards, who sustained injuries from a gunshot on June 9, 2026. *See id.* at ¶ 5; *see also* Complaint at ¶ 17. The motion to dismiss stated that "aspects of the Edwards shooting, as depicted in the [newly-received video], appear[ed] inconsistent with the description of the shooting as set forth in the Complaint." *See* 26 CR 291 at Dkt. 14 at ¶ 8. With regard to Toney, the motion to dismiss further stated that, based upon an email from an ATF special agent on June 15, 2026, "[a]spects of the description of [Toney's] flight in [the email] appear[ed] to be potentially inconsistent with the description of the flight as set forth in Paragraph 16 of the Complaint." *Id.* at ¶¶ 9-11; *see* Complaint at ¶ 16. According to publicly filed documents, on June 18, 2026, Judge Keri Holleb Hotaling granted the government's motion to dismiss the Complaint without prejudice. *See* 26 CR 291 at Dkt. 21.

15. According to video from UC-2, multiple doors to the Dodge Dart then opened and other individuals started to get out, including an individual wearing a ski mask, a dark-colored hooded sweatshirt with a white logo on the left chest and shoes. This person, later identified as Darrion Rayford as set forth in Paragraph 31 below, exited the back passenger seat of the Dodge Dart and pointed a firearm toward UC-1, UC-2, CI-1, and Individual A. According to videos from UC-2, UC-1, and from inside the UCV, Fagan then turned around, removed a firearm from inside his sweatshirt and pointed the firearm towards UC-1, UC-2, CI-1, and Individual A. GORDON also drew a firearm and pointed the firearm towards UC-1, UC-2, CI-1, and Individual A.

16. Based on my review of video from UC-2, and from inside the UCV, soon after Fagan, GORDON, Rayford and others drew firearms, multiple law enforcement vehicles approached the residence with their police lights and sirens activated.

17. Based on my review of video from inside the UCV, GORDON and others attempted to flee in the Dodge Dart as law enforcement officers arrived on scene. When law enforcement surrounded the Dodge Dart, GORDON and others fled on foot, with multiple officers in pursuit. GORDON successfully fled from the scene.

### Identification of GORDON

18. Individual A was arrested at the scene of the attempted robbery. Individual A consented to a search of the phones in his possession at the time of his arrest.

19.     On or about July 14, 2026, Individual A, who was accompanied by his attorney, met with the government.[3] According to an ATF report of that meeting, during the interview Individual A told the government that he, Fagan, and GORDON communicated via Instagram group chat and via phone and video calls regarding the gun sale that was to take place later in the day on June 9, 2026.

20.     According to an ATF report, Individual A further explained that he reached out to Fagan for firearms because he regularly saw Fagan posting photos and videos on social media of himself possessing firearms. Individual A told the government that he originally contacted Fagan on Instagram but later communicated with him over the phone regarding obtaining firearms for the June 9, 2026 sale.

21.     According to an ATF report, Individual A told the government that Fagan then put him into contact with his "little brother," whom law enforcement later identified as GORDON as set forth below, through Instagram, because GORDON also had firearms. Law enforcement showed Individual A a list of participants in an Instagram group chat taken from a forensic extraction of one of Individual A's phones, and Individual A identified his own Instagram account as well as Fagan's and GORDON's accounts as the other participants. Individual A told the government he

---

[3] Individual A has been charged with a firearms-related offense for brokering illegal gun transactions. Individual A provided information to the government under the protection of a proffer agreement. He agreed to proffer with the government with the apparent hope that his efforts may benefit him in his current case. The government has made no promises to Individual A, other than those contained in the proffer agreement, including no promises with respect to his charges or his sentence. Individual A's criminal history includes a prior state firearms-related conviction.

had not met GORDON prior to June 9, 2026, but noted he had FaceTime calls with him before the June 9, 2026 meeting at Loretto Lane.

22.     According to an ATF report, Individual A explained that he did not know that Fagan, GORDON, and the others had intended to rob them. Individual A reviewed photographs, including one of GORDON, and identified GORDON as (1) the person with whom he had video calls on June 9, 2026 before the attempted robbery, (2) one of the people who arrived in the Dodge Dart, and (3) one of the people who pointed firearms at them in an attempt to steal the money.

### *Recovery and Identification of GORDON's Phone*

23.     According to ATF reports, Individual B remained in the Dodge Dart and was taken into custody on June 9, 2026 at the scene of the robbery. According to Illinois Secretary of State records, the Dodge Dart was registered to Individual B. On June 9, 2026, Individual B was interviewed after being advised of her *Miranda* rights. During the interview of Individual B, Individual B signed a consent to search for the Dodge Dart.

24.     Law enforcement searched the Dodge Dart and recovered two cell phones from its back seat. On or about July 27, 2026, the government obtained a search warrant for the two phones. FBI determined that one of the phones, an Apple iPhone 14 Pro Max, was registered to the phone number with the area code 219 and ending in 1122 and the iCloud account "trellofrmsos2@icloud.com."

25.     FBI also identified a publicly accessible Instagram account with the account handle "trellofrmsos." FBI reviewed the photographs uploaded to that

8

account and determined that the individual depicted in those photographs matches a photograph of GORDON from his Illinois state identification card that law enforcement obtained from the Illinois Secretary of State database.

26. FBI also identified a CashApp account associated with GORDON and cell phone number (219) 376-1122. According to CashApp, the name and account associated with this cell phone number is "Dontrell Gordon" and "$moneytrello."

27. Based on my training and experience and the context of the investigation, I believe that GORDON left GORDON's phone in the Dodge Dart prior to fleeing following the attempted robbery on June 9, 2026.

28. According to my review of Individual A's phones, Individual A and GORDON exchanged several phone calls on June 9, 2026, including several calls minutes before the Dodge Dart arrived at the scene of the attempted robbery. Individual A's phone also showed FaceTime communications with GORDON's phone, as Individual A had described to the government.

***Identification of Rayford, and GORDON's Arrest with Rayford on August 10, 2026***

29. FBI determined that the other phone recovered from the Dodge Dart belonged to Rayford. Specifically, the other phone recovered from the Dodge Dart, a white Apple iPhone, was still powered on at the time FBI recovered it. The FBI conducted a search of law enforcement databases for phone numbers associated with Rayford. According to that search, on or about October 3, 2025, Rayford was involved

in a car accident where he listed his phone number as one with the area code 708 and ending in 4357 in a filed insurance claim report.

30.     FBI then identified a CashApp account associated with Rayford and the same cell phone number with the area code 708 and ending in 4357. According to CashApp, the name and account associated with this cell phone number is "Darrion Rayford" and "$facegangdarro."

31.     On June 12, 2026, FBI agents called the cell phone number ending in 4357 while in possession of the white Apple iPhone recovered from the Dodge Dart. That phone rang when called, indicating the phone is registered to phone number ending in 4357. Based on my training and experience and the context of the investigation, I believe that Rayford left this phone in the Dodge Dart when he fled following the attempted robbery.[4]

---

[4] Although Rayford fled the scene of the attempted robbery and was not immediately apprehended, law enforcement identified him as the individual who exited the Dodge Dart wearing a ski mask, a dark-colored hooded sweatshirt with a white logo on the left chest, and shoes through the following evidence:

(1) surveillance video at approximately 9:15 p.m. on June 9, 2026 from a gas station approximately one mile away from the robbery scene showed an individual wearing a dark-colored hooded sweatshirt with a white logo on the left chest, matching the clothing of the backseat passenger who pointed the firearm toward UC-1, UC-2, CI-1, and Individual A, borrowing a phone from a bystander before fleeing when law enforcement arrived;

(2) in a subsequent interview, the bystander told the FBI that he lent his phone to this individual and identified Rayford from an unlabeled photo as the person to whom he lent his phone;

(3) the bystander's phone records showed a call placed at approximately 9:16 p.m. and a text message with GPS coordinates sent and approximately 9:17 p.m. to a number associated with a woman whom a prior Chicago Police Department arrest report confirms Rayford identified as his mother and whose address matches Rayford's listed residence on a recently-expired Illinois state driver's license;

32.     On June 30, 2026, a grand jury returned an indictment charging Rayford with attempted robbery, in violation of 18 U.S.C. §§ 2114(a) and 2, and with knowingly using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. The government also obtained an arrest warrant issued pursuant to the indictment.

33.     On August 10, 2026, FBI agents executed the arrest warrant for Rayford at an apartment on the south side of Chicago.  When they entered the apartment, FBI found Rayford and others, including GORDON. For the reasons described herein, GORDON was also placed under arrest.

---

(4) the bystander also recalled to the FBI that he heard the caller repeatedly say "Mom" while on the call; and

(5) Individual B identified Rayford as a backseat passenger at the time of the robbery; and

34. Based on the foregoing, I respectfully submit that there is probable cause to believe that on or about June 9, 2026, at Chicago in the Northern District of Illinois, Eastern Division, DONTRELL GORDON, did knowingly attempt to commit a robbery of an individual having lawful, charge, control, and custody of money of the United States, and in effecting such attempted robbery, put that person's life in jeopardy by the use of a dangerous weapon, namely a firearm, and (2) use of a firearm during a crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A).

FURTHER AFFIANT SAYETH NOT.

*Thomas J. Callaghan*

THOMAS J. CALLAGHAN
Special Agent, Federal Bureau of Investigation

SWORN TO AND AFFIRMED by telephone August 11, 2026.

Honorable GABRIEL A. FUENTES
United States Magistrate Judge